EX PARTE AUGUST WEBBE.

Court en Banc, April 26, 1929.

ATWOOD, J.—This is an original proceeding by *habeas corpus.* Petitioner, August Webbe, on April 7, 1924, in the Circuit Court of the City of St. Louis entered a plea of guilty to a charge of murder in the second degree and was sentenced to imprisonment in the Missouri State Penitentiary for a term of ten years. On the same day he also entered a plea of guilty to a charge of murder in the second degree in the Circuit Court of the County of St. Louis and was sentenced to imprisonment in the penitentiary for a term of ten years, this sentence to run concurrently with the sentence rendered in the Circuit Court of the City of St. Louis, and pursuant thereto he was committed to said penitentiary on April 10, 1924.

Thereafter, on the 8th day of January, 1925, the Governor of the State of Missouri commuted petitioner's sentence to a term in the Missouri Reformatory at Boonville expiring April 7, 1934, said commutation, among other things, reciting that it was "conditioned, however, that the said August Webbe shall comply with all the rules and regulations of said Reformatory, otherwise the Superintendent thereof shall return him to the Penitentiary there to serve the remainder of his sentence."

Thereafter, the Commissioners of the Department of Penal Institutions of Missouri addressed a communication to the Governor of the State of Missouri stating that among the proceedings had at a meeting of the Commissioners of the Department of Penal Institutions held September 19, 1928, evidence was presented to the Commissioners that the said August Webbe. No. 26703, had violated the terms and conditions of said commutation in that he was guilty of insubordination, misconduct and violation of the rules of the State Reformatory, and in view thereof it was respectfully recommended that said commutation of his sentence be revoked and that he be returned to the Missouri Penitentiary, there to serve out the unexpired portion of his sentence.

Thereafter, under date of September 20, 1928, the Governor of the State of Missouri addressed a communication to the Secretary of State of Missouri, which, omitting salutation, date, preliminary recital and signature, is as follows:

"Whereas, it has been made to appear to the undersigned Governor of the State of Missouri, that the said August Webbe #26703, has violated the terms and conditions of said commutation in this, to-wit: That he is guilty of insubordination, misconduct and violation of the rules of the Missouri Reformatory.

"Now, therefore, in consideration of the premises and by virtue of authority in me vested, I. Sam A. Baker, Governor of the State of Missouri, do hereby annul, cancel and revoke the commutation of sentence to the Missouri Reformatory granted the said August Webbe No. 26703, upon the 9th day of January, 1925, and hereby direct

and order that the Superintendent of the Reformatory at Boonville. Missouri, shall return him to the Penitentiary there to serve the remainder of his sentence.

"Issue accordingly."

Thereupon, petitioner was returned to the Penitentiary in accordance with the order of the Governor, is now in the custody of the Warden thereof, and upon the following grounds claims that he is there illegally confined.

"1. Because the commutation of his sentence from imprisonment in the Penitentiary to confinement in the Missouri Reformatory, provided that in the event of his failure to comply with all the rules and regulations of said Reformatory, the Superintendent of the Reformatory was directed to return him to the Penitentiary. Petitioner says that the records of his conduct at said Reformatory do not show any infraction of the rules of that institution during his period of confinement there, and that he was never reprimanded or criticized for any acts or conduct upon his part by the Superintendent of said institution during his entire confinement therein, and that it was the sole privilege under the terms of his commutation, of the Superintendent of the Missouri Reformatory to determine whether or not petitioner had complied with all the rules and regulations and whether or not it was proper for him to be returned to the Penitentiary; petitioner says that the Superintendent of said Reformatory was not consulted concerning his return, and made no complaint about him to the Department of Penal Institutions or the Governor of this State.

"2. The Governor derives his power to commute the punishment of persons convicted and sentenced to the Penitentiary, to terms in the Missouri Reformatory, from Section 12427, Revised Statutes Mo. 1919, as amended Laws of Mo. 1927, pages 380 and 381. This section provides among other things that,

" 'If any person between the ages of seventeen and twenty-one years who shall have been sentenced to confinement in the Penitentiary, and whose punishment shall have been thereafter commuted by the Governor, or by any court of criminal jurisdiction, as heretofore provided in this chapter, to confinement in the Reformatory, shall be found to be incorrigible and not amenable to reformation by reason of the opportunities and advantages afforded him in such reformatory, the Governor may annul, cancel and revoke the commutation granted such person and order and direct the said board to transfer such person to the State Penitentiary where the said board shall confine him until he shall have served the remainder of the sentence in accordance with the terms of the original judgment against him which had not been served upon the date of the commutation of said sentence to confinement in such reformatory.'

"Petitioner says that no finding was ever made by those in charge of the Missouri Reformatory and that he at no time engaged in any acts or conduct contrary to the rules of said institution or to the orders of the Superintendent in charge thereof, and that no such finding could be made upon the facts, and that the statements contained in the communication to Governor Baker by the Department of Penal Institutions to the effect that your petitioner was guilty of insubordination, misconduct and violation of the rules of the State Reformatory are erroneous, not supported by the records of the Missouri Reformatory, or those who were in charge of said institution."

The revocation here undertaken is obviously not authorized by Section 12427, Revised Statutes 1919, as amended in 1927, because it rests not upon a finding that petitioner is "incorrigible and not amenable to reformation by reason of the opportunities and advantages afforded him in such reformatory," as required by this statute, but upon evidence presented to the Commissioners of the Department of Penal Institutions that petitioner "has violated the terms and conditions of said commutation in this, to-wit: That he is guilty of insubordination, misconduct and violation of the rules of the State Reformatory." However, the Governor is not confined to the statutory ground or manner of revocation. Section 8, Article V, of the Missouri Constitution empowers him to grant commutations "upon such condition and with such restrictions and limitations as he may think proper." Relative to commutations, in 20 Ruling Case Law at page 530, it is said:

"A commutation is the substitution of a less for a greater punishment, by authority of law, and may be imposed upon the convict without his acceptance, and against his consent. In this respect it differs from a pardon to the validity of which acceptance is essential. The power to commute a sentence is a part of the pardoning power and may be exercised under a general grant of that power."

See Biddle. Warden v. Perovich, 274 U. S. 480. Also, commutation is thus defined in Black's Law Dictionary:

"Commutation of a punishment is not a conditional pardon, but the substitution of a lower for a higher grade of punishment, and is presumed to be for the culprit's benefit."

Unless the conditions, restrictions and limitations attached to the commutation are illegal, immoral or impossible of performance they are valid and binding. [Re Charles v. Houghton (Oregon Supreme Court), 9 L. R. A. (N. S.) 737.] The condition specified in this commutation was that "the said August Webbe shall comply with all the rules and regulations of said Reformatory." It was obviously neither illegal, immoral nor impossible performance.

The well-settled rule seems to be that where the conditional pardon or commutation expressly provides that upon a violation of the

condition the offender shall be liable to summary arrest and re-commitment for the unexpired portion of his original term, such provision is binding upon the convict and authorizes his arrest and recommitment upon non-performance of the condition in the manner and by or through the official authority therein provided. [Ex parte Houghton (Oregon Sup. Ct.), 13 Am. & Eng. Ann. Cas. 1104 (note), citing State v. Horne (Fla.), 7 L. R. A. (N. S.) 719; 24 Am. & Eng. Enc. Law (2 Ed), p. 595; 20 R. C. L. p. 573.] On the other hand, it is equally well settled by practically the same line of authorities that when a conditional pardon or commutation is issued which does not provide how it shall be determined whether the prisoner has violated the conditions imposed, then the convict is entitled to a hearing before some competent judicial tribunal before he can be remanded to serve the remainder of his sentence. [20 R. C. L. 572; Ex parte Strauss (Mo. Sup.), 7 S. W. (2d) 1000; and author-ities last above cited.] The commutation in this case clearly pro-vided, upon condition broken, for the summary return of petitioner to the Penitentiary by the Superintendent of the Reformatory. We cannot adopt petitioner's suggestion that it was the Superintendent's privilege to determine "whether or not it was proper for him to be returned to the Penitentiary." The language of the commutation in this respect is mandatory and not permissive. Whenever Webbe failed to comply with all the rules and regulations of the Reforma-tory it was the express duty of the Superintendent to "return him to the Penitentiary." The prisoner could not comply if the Super-intendent summarily performed this duty, because it was so pro-vided in the commutation; and if the Superintendent failed to do so it was within the Governor's power to enforce performance of this duty, because it was a part of his executive function to sustain and make effective the terms of the order of commutation. [Spencer v. Kees, 47 Wash. 276.]

Of course, no duty arose on the part of the Superintendent to return Webbe to the Penitentiary unless and until he failed to com-ply with some rule or regulation of the Reformatory. The question then arises, who was to determine that fact? Petitioner alleges that "it was the sole privilege under the terms of his commutation, of the Superintendent of the Missouri Reformatory to determine wheth-er or not petitioner had complied with all the rules and regulations." Ordinarily the Superintendent, or person immediately in charge of an institution, is the person to determine whether or not its rules and regulations are being complied with. Section 12423, Revised Stat-utes 1919, makes the Superintendent the "chief executive officer of the Reformatory" and gives him "control and management of all the educational, domestic and industrial affairs of the institution." It was evidently his function to know and determine whether or not

the inmates severally complied with all the rules and regulations of the institution, and the very terms of this commutation making it the Superintendent's duty summarily to return the prisoner to the Penitentiary upon condition broken, seem necessarily to imply that he should exercise this function in this case. Ex parte Strauss (Mo. Sup.), 7 S. W. (2d) 1000, is thus distinguishable.

The Superintendent of the Reformatory testified at the hearing of the instant case that as such Superintendent he maintained in the office of that institution a record of the deportment of those who are assigned to it by the various courts and officers of the State; that this record was kept under the rules adopted by the Commissioners of the Department of Penal Institutions providing for the merit system; that this record was caused to be made by him as Superintendent through his chief clerk pursuant to such rules; and that this record "is made up of certain merits that each boy receives each day and any misconduct on his part is reported by the officer under whom that misconduct occurred." This record was introduced in evidence and with reference to petitioner, among other things, it showed the following:

"Paroled Feb. 16, 1926—Returned Dec. 9, 1926.
"Returned to Penitentiary Sept. 21, 1928.
"Reported for fighting in dormitory 2/24-30rd."

With reference to this part of the record the Superintendent further testified as follows:

"I notice there is one mark for misconduct for fighting in the dormitory. That is dated 2/24—the thirty day report. Now, that means thirty days additional time. That involves the whole company—I would say a company of boys composed of sixty.

"Q. And what is the date of that? A. It does not give the year—it clearly gives the date of the month, but not the year.

"Q. Do you have any independent recollection of the year? A. No, not exactly; I think it is about two years ago, as I recall now.

"Q. Does that record show any other violation of the rules? A. No, except the return from parole."

While the Superintendent's record does not specifically state that petitioner violated any rule or regulation, it does say that he was reported for fighting in the dormitory for which he was given thirty days' additional time; also, that after he was paroled, February 16, 1926, he was returned December 9, 1926. We might well assume that the Superintendent's record would not show punishment of an alleged offender unless he had first been found guilty of violating a rule or regulation of the institution, and in his above testimony the Superintendent treats both incidents as violations of rules. It thus appears that petitioner did not "comply with all the rules and regulations of said Reformatory," and that the Superintendent so de-

termined. His failure to return the prisoner to the Penitentiary promptly upon such determination was probably due to an erroneous impression, also apparently entertained by petitioner's counsel as above noted, that the Superintendent might also in the exercise of his own discretion determine "whether or not it was proper for him to be returned to the Penitentiary."

On the pleadings and evidence here presented the commutation was properly revoked and the prisoner lawfully returned to the Penitentiary. Petitioner is, therefore, remanded to the custody of the Warden of the State Penitentiary. All concur, except *Blair, J.,* not sitting.