FILED 101
Honorable John Wm. Buechner State Representative, 94th District Room 108, Capitol Building Jefferson City, Missouri 65101
Dear Representative Buechner:
This official opinion is being issued in response to your recent request for a ruling concerning the effect of a governor's pardon on the records relating to the pardoned offense. Specifically, you ask the two following questions:
 "1. Does Missouri law provide for the expungement of Magistrate Court records where a governor's pardon has been granted?
 "2. Specifically, do §§ 610.100 and 610.105, RSMo Supp. 1975, operate to automatically expunge court records where an individual has been convicted on a guilty plea, served his sentence and then been granted a governor's pardon?"
You go on to explain that a citizen of Missouri, who now resides in your district, was granted a pardon by former Governor Christopher Bond and wishes to have the court records of his conviction expunged. These records, you explain, are in the possession of a St. Louis County magistrate judge and you ask whether there is any statutory authority which would authorize the expungement of these records.
The governor's power to pardon is derived from Article IV, § 7, Constitution of Missouri, which reads, in pertinent part, as follows:
 "The governor shall have power to grant reprieves, commutations and pardons, after conviction, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to provisions of law as to the manner of applying for pardons. . . ."
The governor's pardoning power also is statutorily codified in § 549.010, RSMo 1969, which provides:
 "In all cases in which the governor is authorized by the constitution to grant pardons, he may grant the same, with such conditions and under such restrictions as he may think proper."
As a reading of both Article IV, § 7, and § 549.010 readily reveals, a governor is free to place limitations or restrictions upon any part he elects to grant, provided these conditions are not "illegal, immoral, or impossible of performance. . . ."Ex parte Webbe, 322 Mo. 859, 30 S.W.2d 612, 615 (Mo.Banc 1929). However, for purposes of your questions and this opinion it will be assumed that the pardon referred to was an unrestricted and unconditional pardon.
The power to pardon has been traditionally described by the courts of this state "as a power to exempt individuals from punishment which the law inflicts for crimes committed." Theodorov. Department of Liquor Control, 527 S.W.2d 350, 353 (Mo.Banc 1975). Consequently, § 222.030, RSMo, provides that where a person, because of a criminal conviction, is "disqualified to be sworn as a juror in any cause, or to vote at any election, or to hold any office of honor, profit or trust within this state," an unconditional pardon will restore such rights. The effect of an unconditional pardon was further spelled out in Guastellov. Department of Liquor Control, 536 S.W.2d 21 (Mo.Banc 1976). In Guastello, the court held that an unconditional pardon obliterates "the fact of conviction" but not the underlying guilt. Thus, if an individual is statutorily disqualified from holding a particular occupation based solely on the fact of conviction, a full pardon will restore the eligibility of the offender. On the other hand, if good character (requiring an absence of guilt) is a necessary qualification, the offender is not automatically once again qualified, merely as a result of the pardon. Guastellov. Department of Liquor Control, supra at 23-25.
Prior to Guastello v. Department of Liquor Control, supra,
records of pardoned convictions were routinely used to support the application of the Habitual Criminal Act, § 556.280, RSMo 1969, a practice which repeatedly had been sanctioned by the Missouri Supreme Court. State v. Durham, 418 S.W.2d 23, 27 (Mo. 1967);State ex rel. Stewart v. Blair, 356 Mo. 790, 203 S.W.2d 716,719 (Mo.Banc 1947); State v. Asher, 246 S.W. 911, 912-914 (Mo. 1922). These decisions were, however, overruled by Guastello,
which concluded that since a gubernatorial pardon "obliterated" the fact of conviction, "such `obliterated conviction' could not be used as the basis for subjecting [a] defendant to the Habitual Criminal Act if he later committed a criminal offense."Guastello v. Department of Liquor Control, supra at 25. Nevertheless,Guastello did not hold that an unconditional gubernatorial pardon "obliterated" the records of conviction. Obviously, if the records of conviction, as well as the fact of conviction, were wiped out and obliterated by a gubernatorial pardon, such an action would have the effect of wiping out both the conviction and the guilt, and the offender would be treated "as if he had not committed the offense in the first place." This interpretation of a governor's pardon was expressly rejected in the Guastello opinion. See Guastello v. Department of LiquorControl, supra at 23.
It is also clear that none of the provisions of Missouri's Sunshine Law dealing with arrest records requires or authorizes the expungement of records of arrest or conviction for an offense which is later "obliterated" by a governor's pardon. In your opinion request, you specifically mentioned §§ 610.100 and610.105, RSMo Supp. 1975. The former of these two sections reads as follows:
 "If any person is arrested and not charged with an offense against the law within thirty days of his arrest, all records of the arrest and of any detention or confinement incident thereto shall thereafter be closed records to all persons except the person arrested. If there is no conviction within one year after the records are closed, all records of the arrest and of any detention or confinement incident thereto shall be expunged in any city or county having a population of five hundred thousand or more."
The other section to which you make reference, § 610.105, reads as follows:
 "If the person arrested is charged but the case is subsequently nolle prossed, dismissed or the accused is found not guilty in the court in which the action is prosecuted, official records pertaining to the case shall thereafter be closed records to all persons except the person arrested or charged."
Clearly, § 610.100 is applicable only in situations where an individual is arrested, but never charged with an offense; in such instances, and after the passage of the requisite amount of time, this section provides that the records are to be "expunged".[1]
In the event a person is, in fact, charged but the case is subsequently "nolle prossed, dismissed, or the accused is found not guilty", § 610.105 requires that the "official records pertaining to the case" be "closed records".[2] Since an individual obviously would have had to have been "charged" with an offense before he could have been convicted of it, it is clear that a person who has been convicted and then pardoned could not fall within the purview of § 610.100, which applies only where the person is arrested but never charged. Likewise, since a gubernatorial pardon is not a nolle prosequi, a dismissal or a finding of not guilty "in the court in which the action is prosecuted," § 610.105 also would not apply to the records of a pardoned conviction.
It is, therefore, our opinion that while a governor's unconditional pardon operates to "obliterate" the fact of conviction, and to restore the individual's civil liberties, it does not operate to expunge the records of conviction or the detention incident thereto.
Since your opinion request specifically concerns the power of a magistrate court to expunge records relating to a pardoned conviction, we do not consider the question of whether a circuit court, pursuant to its general equity powers, has the authority to order the expungement of such records. In Opinion No. 188, issued October 15, 1975, to J. Anthony Dill, we noted that circuit courts occasionally have utilized their equity powers to order the expungement of arrest records in particular instances. The validity of such a practice is somewhat questionable. SeeCissell v. Brostron, 395 S.W.2d 322, 325 (St.L. Ct.App. 1965). In any event, it is clear that magistrate courts possess no such powers since magistrate courts have no equity jurisdiction.Bridge Development Co. v. Vurro, 519 S.W.2d 321, 325 (Mo.Ct.App. at St.L. 1975); § 482.100 (2), RSMo 1969.
Moreover, although you suggest in your opinion request that, if necessary, legislation should be introduced to insure expungement of the records of a pardoned conviction, the complete expungement of such records would, in many cases, be constitutionally prohibited. For example, if the pardoned individual had previously appealed his conviction to the Court of Appeals or to the Supreme Court, Article V, § 12 of the Constitution of Missouri requires that the court's opinion "shall be in writing and filed in the respective causes, and shall become a part of the records of the court and be free for publication." Pursuant to § 477.231, RSMo 1969, and an order entered by the Missouri Supreme Court, en banc, on November 12, 1956, the opinions of the Missouri appellate courts are officially reported in published volumes of the Southwestern Reporter, copies of which are disseminated to attorneys and law libraries throughout the United States. Consequently, in instances where the expunged conviction has been the subject of an appeal, the expungement of all of the records of that conviction would not only be practically impossible but also unconstitutional. See also, Opinion No. 109, issued March 25, 1974, to A. J. Seier.
CONCLUSION
It is, therefore, the opinion of this office that a governor's unconditional pardon of a person convicted of a crime does not operate to expunge the records pertaining to such person. Nor do §§ 610.100 or 610.105, RSMo Supp. 1975, require or authorize the expungement of such records.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Philip M. Koppe.
Very truly yours,
 JOHN ASHCROFT Attorney General
Enclosures: Op. No. 299, 9-28-73, McNeal Op. No. 109, 3-25-74, Seier
[1] Note that this requirement is applicable only in cities or counties having a population of 500,000 or more.
[2] For the distinction between "closed records" and records required to be "expunged", see Opinion No. 299, issued September 28, 1973, to Theodore D. McNeal, and see also, State ex rel.M. B. v. Brown, 532 S.W.2d 893, 896 (Mo.Ct.App. at S.L. 1976).