**David Joseph RAWLS, Appellant,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**No. 17481.**

United States Court of Appeals
Eighth Circuit.

April 22, 1964.

Robert F. Redmond, III, and Lynn C. Hoover, Kansas City, Mo., for appellant.

F. Russell Millin, U. S. Atty., Kansas City, Mo., and Calvin K. Hamilton, Asst. U. S. Atty., Kansas City, Mo., and John Harry Wiggins, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before VAN OOSTERHOUT, RIDGE and MEHAFFY, Circuit Judges.

RIDGE, Circuit Judge.

On February 6, 1959, appellant, a "young adult offender" within the purview of Section 4209, Title 18 U.S.C.A., on his plea of guilty to violation of Section 2312, Title 18 U.S.C.A. was sentenced to "an indefinite term under Title 18, U.S.C.A., Section 5010(b)", the Youth Corrections Act.[1] He was confined under that sentence in the Federal Correctional Institute, Texarkana, Texas. On March 8, 1961, he was transferred to the Medical Center for Federal Prisoners, at Springfield, Missouri. Since that time, appellant has been detained in the latter institution as a mentally incompetent person.[2]

1. Appellant's exact age at time of sentence was 25 years, 3 months and 21 days.

2. Apparently, at the time of appellant's removal from the Federal Correctional In-

On January 25, 1963, the Acting Director of the Federal Bureau of Prisons, pursuant to Section 4247, Title 18 U.S.C.A., filed with the Clerk of the United States District Court for the Western District of Missouri, a certificate to the effect that appellant, having been committed to his custody as above stated, would normally be entitled to conditional release on February 5, 1963, under Section 5017(d) of Title 18 U.S.C.A. (Youth Corrections Act) but for his mental incompetency; that if petitioner was then so released he would probably endanger the safety of the officers or other interests of the United States, and no other suitable arrangements for his custody and care were then available. It was further stated in such document that the same was being submitted to the District Court pursuant to the provisions of Section 4247, Title 18 U.S.C.A., relating to mental defectives. Upon receipt thereof, District Judge Richard M. Duncan entered an order directing that a hearing be held on such certificate as required by Section 4247, supra, "on or before February 4, 1963." In that order, he also appointed a psychiatrist to examine appellant for and on behalf of the Government, and another psychiatrist, designated at the request of appellant, to examine him as provided in that Section.

On February 4, 1963, a hearing was commenced on the Section 4247 certificate, *ante*. Thereafter, on February 8, 1963, District Judge Oliver, considering the issues presented thereby to be at that "time moot," dismissed the same "without prejudice."

Thereafter, on March 21, 1963, appellant filed a petition for writ of habeas corpus in the same District Court, alleging that he was entitled to be released from custody of appellee on the ground that "having served the entirety of the sentence imposed on him, to-wit, four (4) years" under the Youth Corrections Act, he was then being unlawfully detained by appellee. Judge Oliver issued a show cause order on that petition. In due course appellee filed response thereto, in which it was alleged, among other things, that:

"The Court is thoroughly familiar with the personal background and penal history of petitioner, David Joseph Rawls. This entire history came before the Court in Civil Case No. 1961, Western District of Missouri, Southern Division. In order that this record be entirely clear, however, a brief summary of the latter case is herewith submitted.

"On January 25, 1963, the Acting Director of the Federal Bureau of Prisons, acting pursuant to Section 4247, Title 18, United States Code, filed with the Clerk of the United States District Court for the Western District of Missouri, a certificate of mental incompetency and probably (sic) dangerous in event of release in regard to David Joseph Rawls. It was reported therein that release of Rawls from confinement would probably endanger the safety of the officers or other interests of the United States, and that suitable arrangements for his care and custody other than in Federal Institutions was then unavailable. Two hearings were held in this connection at Springfield, Missouri, the dates being February 4, 1963, and February 8, 1963.

"It was determined that at that time Rawls was held in lawful cus-

stitute, at Texarkana, Texas, and transfer to the Medical Center for Federal Prisoners, at Springfield, Missouri, no order of removal within the contemplation of Section 4241, Title 18 U.S.C.A., was executed by the Director of the Bureau of Prisons. Seemingly, appellant being a young adult offender, the Director of the Bureau of Prisons directed such transfer to be made pursuant to the general authority vested in the Attorney General of the United States under Section 5015(a) (2) of the Youth Corrections Act, or Section 4082, Title 18 U.S.C.A.

The Director of the Bureau of Prisons has been duly authorized by the Attorney General of the United States to so act in relation to youths committed to his custody.

tody of the Attorney General of the United States pursuant to a commitment signed by the Honorable Ben C. Dawkins, United States District Judge for the Western District of Louisiana, under the provisions of Section 5010(b), Title 18, United States Code. Service of the sentence commenced on February 6, 1959, and four (4) years service was concluded February 5, 1963. A copy of the original commitment signed by Judge Dawkins (was) attached (thereto) as Exhibit "A". (Par. added.)

"Following the original commitment, Rawls was confined at various institutions designated by the Attorney General. On February 15, 1961, while confined at the Federal Correctional Institute, Texarkana, Texas, Rawls was examined by a board convened at said institution and certified as being of unsound mind, two of three members of the board signing the certification, the third member being absent. *This certificate was executed* by James V. Bennett, Director of the Federal Bureau of Prisons, *in February, 1963, 'Nunc Pro Tunc' as of the date March 8, 1961.* (Emp. added.)

"During the course of the hearings and upon being advised that Mr. Bennett had executed the certification 'Nunc Pro Tunc,' this Court held that the proceedings pursuant to Section 4247 were moot due to the fact that a certification of Section 4241, Title 18, United States Code, authorized detention of the prisoner until expiration of the sentence imposed. Under the Youth Corrections Act (5010(b)), release of the youthful offender is governed by Section 5017(c), Title 18, United States Code, which provides for conditional release under supervision on or before the expiration of four (4) years and unconditional release on or before six (6) years from the date of his conviction."

Thereafter, in such return the issue was raised that the Bureau of Prisons had the right to hold appellant as a mentally defective prisoner in the light of his certification under Section 4241, Title 18, U.S.C.A., "until the expiration of his maximum sentence without allowance for good time," and since it appeared that Section of the Criminal Code was applicable to appellant's sentence and commitment under the Youth Corrections Act, supra, it was prayed that appellant's "application for Writ of Habeas Corpus" be denied.[3]

No hearing was held by the District Court on the petition for writ of habeas corpus filed by appellant, *ante.* Instead, District Judge Oliver undertook by memorandum opinion, to be found at 218 F.Supp. 849, to state and determine some

3. Petitioner attacks the lawful composition of the Board of Examiners on whose recommendation the Director of the Bureau of Prisons certified appellant to be mentally incompetent. Since we do not consider such certification to have any jurisdictional aspect in the case at bar, we shall not encumber this opinion by following appellant in his contention and argument made in respect to such matter.

It is sufficient to say that as a young adult offender, appellant's sentencing court made the Federal Youth Corrections Act applicable to his sentence, and under § 5015(a) (2) of that Act the Director of the Bureau of Prisons is given the power to "allocate and direct the transfer of (a) committed youth offender to (another) agency or institution for treatment; or (3) order the committed youth offender confined and afforded treatment under such conditions as he believes best designed for the protection of the public."

The Medical Center for Federal Prisoners, at Springfield, Missouri, is an institution confided by the Congress to the Attorney General and placed under the supervision of the Director of the Bureau of Prisons. It is not exclusively an institution for the confinement of felons. The Act of Congress creating that institution makes it available to the Attorney General as a "hospital" for the care and treatment of all persons committed to his custody; convicted, as well as those awaiting trial on pending charges or discharge from sentences imposed. Cf. Rosheisen v. Steele, 193 F.2d 273 (8 Cir. 1951); Garcia v. Steele, 193 F.2d 276 (8 Cir. 1951).

of the issues raised by that petition. It is manifest from what is therein stated that he did take judicial notice of, and did consider, the record made before him in the previous Section 4247 proceeding, reference to which is hereinbefore made.[4]

It is appellant's contention before us that:

"(1) The provisions of Chapter 313 of Title 18, United States Code (relating to mental defectives) do not apply to appellant as one sentenced pursuant to the Youth Corrections Act."

"(2) The appellant has not been legally and validly certified pursuant to Section 4241 of Title 18, United States Code, assuming its application"

for confinement in the Medical Center for Federal Prisoners, at Springfield, Missouri, so as to warrant his further confinement therein. Stated otherwise, it is appellant's contention that Chapter 313, *ante,* relating to "Mental Defectives" is inapplicable to a "young adult offender" who is sentenced pursuant to the "Youth Corrections Act" supra, and, absent such applicability, appellant asserts he is now being held in custody of respondent after serving four (4) years of the sentence imposed on him, in violation of the Youth Corrections Act (Section 5017(c), (d), and (e), Title 18 U.S.C.A.). Hence he contends he is now entitled to his discharge from confinement under the sentence he is now serving.

District Judge Oliver, by his memorandum opinion supra, undertook to relate the Young Adult Act and the Youth Corrections Act, supra, to Section 4241, Title 18 U.S.C.A., as follows:

"In view of the Congressional history and declared purpose of the Youth Corrections Act and the consistency of that purpose with the remedial legislation enacted by the Congress since 1930, we hold that the provisions of Chapter 313 are generally applicable to persons sentenced under the Youth Corrections Act. Specifically, we hold that power was vested in the Attorney General by Section 4241 to direct, upon his acceptance of the report of the Board of Examiners, (made at the Federal Correctional Institute located at Texarkana, Texas) the transfer of the petitioner to Springfield Medical Center to be there kept until, in the judgment of the superintendent, the (appellant) has been restored to sanity or health or until the maximum sentence has been served, without deduction for any commutation of his sentence." (218 F.Supp., l. c. 857.)

Hence, without holding any hearing on appellant's application for a writ of habeas corpus, he ruled:

"petitioner's maximum sentence under the Youth Corrections Act, without commutation, is six years"

and therefore he is not presently entitled to be released from the custody of appellee.

However, such was not the final ruling made by District Judge Oliver in the case at bar. Six (6) later memorandum orders were entered in the record of this case. As a consequence, the memorandum order of the District Court reported at 218 F.Supp. 849, must be read in the light of such other memoranda, as well as the final order entered in Case Number 1961, reference to which is hereinabove made; before a clear understanding of the premise for the only final, reviewable order entered in this case can be gleaned from this record, namely, " * * * that petitioner's application for habeas corpus

---

4. Inadvertently, the Clerk of the District Court overlooked that fact and failed to forward to this Court, as a part of the record in this appeal, the record made in the § 4247 proceeding. Since the submission of this appeal was on briefs, *sans* argument, we have received from the Clerk of the District Court the record made in Civil Case No. 1961, entitled "In Re. David Joseph Rawls, W.D.Mo. (Southern Division)." No proper understanding of the issues raised in the instant appeal can be reached without such record.

should be and is hereby denied," and it was "so ordered." [5]

We can well appreciate the complex, compounded, difficult and time-consuming procedural and factual matters presented and confronting District Judges in the disposition of habeas corpus proceedings such as here reviewed. Deplorable as that might be, we think, in the light of the record here presented for review, it is not hypercritical for us to say that it is only a final judgment, entered in the light of facts found in relation to applicable law, and not reasons given therefor, that is reviewable on appeal and such review can only be made on the premise of the record in each given case.

However, since we have granted appellant leave to appeal in forma pauperis and have appointed counsel for him,[6] we shall proceed to consider the basic issues, *ante*,

raised and presented by court-appointed counsel. Though we do not follow counsel in all the arguments and matters raised and presented * * * we recognize the devotion to duty and the voluntary service they have afforded petitioner, and acknowledge the help they have given to this Court in the disposition of this appeal.

By Public Law 85–752, approved August 25, 1958 (72 Stat. 846), Sections 4208 and 4209 (Young Adult Act) were added to Chapter 311, Title 18 U.S.C.A., covering "Paroles". This apparently was done to reflect the fact that such Act should not be considered amendatory of the Youth Corrections Act.[7]

Under the provisions of the Young Adult Act the sentencing provisions of the Federal Youth Corrections Act may be imposed on a young adult of-

---

5. The final order entered of record in this case on October 1, 1963, is in form as follows:

"On September 10, 1963, we issued a final order in this cause, subject only to petitioner's right either to file a further affidavit or to propound further interrogatories to either Dr. Joslin or Dr. Smith.

"Since that order, and under date of September 13, 1963, petitioner filed a further affidavit in which he again stated that he never talked with Dr. Joslin and that Dr. Joslin's affidavit to the contrary is completely false.

"Our Memorandum and Order of September 10, 1963, assumed that the petitioner would so testify at any hearing, so that no new position of the petitioner is stated in his most recent affidavit.

"Petitioner has not elected to propound any written interrogatories to either Dr. Joslin or Dr. Smith. We are therefore able to make the sole remaining finding of fact on the basis of the affidavits submitted to us pursuant to Section 2246 of Title 28, United States Code. We find that Dr. Joslin's affidavit, corroborated as it is by all other documentary evidence in this case, is true and that the Section 4241 certificate was and is a legal and valid certification pursuant to that statute.

"We further determine, for all of the reasons stated in this, and in our earlier Memoranda and Orders, that petitioner's application for habeas corpus should be and is hereby denied.

"IT IS SO ORDERED."

6. We were induced to do so in the light of the following order entered by the District Court:

"On October 1, 1963, we issued a final order that petitioner's application for habeas corpus be denied. Numerous earlier orders have been issued in connection with this case.

"Correspondence between the Court and the petitioner, all of which will be forwarded to the Court of Appeals, clearly indicates, and the Court accepts, petitioner's letter of October 4, 1963 as a timely notice of appeal and as a timely motion for leave to proceed in forma pauperis.

"In accordance with Section 1915, Title 28, United States Code, we certify that petitioner's appeal is taken in good faith and that he therefore is entitled to proceed in forma pauperis.

"Because of the legal question presented, the District Court also recommends that counsel be appointed by the Court of Appeals to assist petitioner in that Court.

"For the reasons stated, petitioner's motion to proceed in forma pauperis should be and is hereby sustained, and petitioner's timely appeal shall, pursuant to the provision of Section 1915 of Title 28, United States Code, be permitted to so proceed.

"IT IS SO ORDERED."

7. See Legislative History, 1958 U.S.C. Cong. & Adm.News, p. 3891.

fender where "the court finds that there is reasonable grounds to believe that the defendant will benefit from the treatment provided under the Federal Youth Corrections Act," Section 4209, Title 18 U.S.C.A. Appellant here is a "young adult offender" under sentence so imposed. The Youth Corrections Act is a modified indeterminate sentencing law for youth and young adult offenders. Such acts were designed by the Congress for the rehabilitation of youthful offenders, and not solely for confinement upon conviction for criminal offenses. Under the provisions thereof, the Attorney General is given broad powers, and the Director of the Bureau of Prisons may transfer an offender committed thereunder from one institution or agency to another (Section 5015(b)) with approval of the Youth Corrections Board, without further statutory authority. It clearly appears from the provisions of the Youth Corrections Act that the Director of the Bureau of Prisons and the Youth Corrections Division therein provided for are empowered by the Congress to administer the provisions of that Act and enter orders respecting the "conditional release" and unconditional discharge of persons committed to their custody pursuant to the provisions thereof. Cf. Sections 5007, 5014, 5017, 5020 and 5021, Title 18 U.S.C.A.

■■ In the light of the special provisions of the Young Adult Act and Youth Corrections Act, supra, some doubt arises as to applicability of the mandate of Section 4241, Title 18 U.S.C.A., as to those committed to the custody of the Attorney General under the Young Adult Act. The premise of such doubt may be stated thus: The mandate of Section 5017(d), supra, is that "a youth offender committed under Section 5010(c) * * * shall be released conditionally under supervision not later than two years before the expiration of the term imposed by the court." Release "under supervision" is thereby made a vested right of those committed under the Youth Corrections Act, and such right to release is not a "commutation of sentence." A statute reducing the time of service of a sentence is not a "conditional commutation." Cf. Chandler v. Johnston, (9 Cir. 1943) 133 F.2d 139, 142; 67 C.J.S. Pardons § 15, page 585. The term "conditional release" as framed in the Youth Corrections Act is different from "commutation of sentence" in that the former does not reduce the terms of a sentence imposed, while the latter term is the substitution of a "lesser" for a "greater" punishment. Cf. State ex rel. Herman v. Powell, 139 Mont. 583, 367 P.2d 553, 556; Gilderbloom v. State, 160 Tex.Cr.R. 471, 272 S.W.2d 106, 110; Lime v. Blagg, 345 Mo. 1, 131 S.W.2d 583, 585. In the light of the philosophy of the Youth Corrections Act and "(t)he underlying theory of the bill, to substitute for retributive punishment methods of training and treatment designed to correct and prevent antisocial tendencies," (U.S.Code Cong.Service Legis.History, 81 Cong.2d Sess.1950, p. 3985) we do not consider the right to "conditional release" from a sentence adjudged thereunder to be equated with "commutation of sentence" as provided in Section 4241, supra.

Manifestly, "mental defectives" within the purview of Chapter 313, Title 18 U.S.C.A. were not within the contemplation of the Congress to receive the beneficence of the Youth Corrections Act. If they were, Congress would not have mandatorily provided that youths committed thereunder "shall be conditionally released" as provided in Section 5017(d) supra. To hold otherwise would be a departure and distortion of the "training and treatment" of youths intended to be covered thereby. To keep appellant confined in the Medical Center for Federal Prisoners after serving four (4) years of the sentence imposed upon him under the Young Adult Act seemingly is a distortion of the purpose of the Young Adult Act, supra.

■ The issues raised by appellant's application for writ of habeas corpus in this case were singularly adjudicated by the District Court on the face of the *nunc pro tunc* order, supra, issued by the Director of the Bureau of Prisons. In so doing, we think the District Court was

in error for the following reasons. Under the provisions of the Youth Corrections Act (5015(a) (2)) the "Director * * * may * * * transfer (a) committed youth offender to any agency or institution for treatment" without resort to the procedure outlined in Section 4241, supra. In the scheme of the Young Adult Act, construed in the light of the Youth Corrections Act, we can perceive no reason why the "Divisions"—"Bureau"— and "Director" charged with the administration of the latter Act may not in their sound discretion use the facilities of "Medical Centers" to administer to and treat young adult offenders (not juveniles) entrusted to the custody of the Attorney General. As noted in footnote 3 *ante*, the Medical Center for Federal Prisoners, at Springfield, Missouri, is not a "penitentiary" as that term is ordinarily used. See also, Williams v. Steele, 194 F.2d 917 (8 Cir. 1952); Kuczynski v. United States, 149 F.2d 478 (7 Cir. 1945); Greenwood v. United States, 219 F.2d 376, 387 (8 Cir. 1955).

■ The Youth Corrections Act specifically provides that the "[c]ommutation of sentence authorized by any Act of Congress shall not be granted as a matter of right to committed youth offenders but only in accordance with rules prescribed by the Director with the approval of the Division." Section 5017(e), Title 18 U.S.C.A. Hence, the "Director of the Bureau of Prisons" and "Youth Corrections Division of the Board of Paroles" being authorized to transfer a youthful inmate committed to their custody from one institution to another, may administratively make such transfers without resort to Section 4241, supra. Cf. Suarez v. Wilkinson, D.C., 133 F.Supp. 38; Arkadiele v. Markey, D.C., 186 F.Supp. 586. Therefore, we do not consider a Section 4241 certificate (particularly one issued *nunc pro tunc* two (2) years after appellant's original commitment to the Medical Center) to have the necessary legal validity to warrant appellant's continued detention in the Medical Center for Federal Prisoners, at Springfield, Missouri, after

his statutory right to conditional release, i. e. "not later than two years before the expiration of the term imposed by" his sentencing court has accrued under the Youth Corrections Act, supra. Such right to conditional release cannot be taken away from a youth offender solely by the application of Section 4241, Title 18 U.S.C.A. to his sentence.

■ It is a cardinal principle of statutory construction that when there are two Acts covering the same subject matter and situation, "the rule is to give effect to both if possible." Cf. United States v. Borden Company, 308 U.S. 188, 198–199, 60 S.Ct. 182, 188, 84 L.Ed. 181.

■ The procedure in Chapter 313, and particularly Sections 4247–4248 thereof, was intended by the Congress to "insure equitable disposition of each case where a mental incompetent nearing expiration" of the term of his sentence would be afforded a judicial remedy to establish before a District Court his right to release from custody when he is lawfully entitled thereto. The purpose of Section 4247 is to insure a judicial hearing to all prisoners committed to the custody of the Attorney General where a claim is made that by specific law he is entitled to release from custody since the term of his sentence has run its course, and he then is being deprived of his liberty, contrary to applicable law. The purpose for that Section as related to "mental defectives" is to make it mandatory upon the District Court to provide for an examination of such imprisoned person by two psychiatrists, one of whom is to be chosen by the incarcerated, rather than leave that matter to the discretion of the Director of the Bureau of Prisons. See, U.S.Cong.Service, 81 Cong. 1st Sess. 1949, pp. 1928–1930. "[W]here, as here, Congress has created a special administrative (or judicial) procedure" to be followed "for the determination of the status of (a person) * * * and has prescribed a procedure which meets all requirements of due process, that remedy" should be followed as to every person covered thereby. Cf. Sunshine Anthracite Coal Co. v. Adkins, Collector, 310

**29**

U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940); Ashley v. Pescor, 147 F.2d 318 (8 Cir. 1945); Kuczynski v. United States, supra.

In the certificate filed by the Director of the Bureau of Prisons pursuant to Section 4247, supra, it was alleged that appellant was then currently incarcerated in the Medical Center for Federal Prisoners, at Springfield, Missouri; "that his present release date, as established by the provisions of 18 U.S.C.A., 5017(c) (was) February 5, 1963," and that he ordinarily would be entitled to release from confinement but for his then present mental condition. It is manifest in this record that it was singularly the then existing mental condition of petitioner which led the Director of the Bureau of Prisons to the conclusion that petitioner would "probably endanger the safety of the officers, the property, or other interests of the United States" if then released. District Judge Oliver held a partial hearing in respect to that certification. The testimony of two psychiatrists was adduced on the issue of "dangerousness" raised by the Director. We have examined the partial transcript made at that hearing. It is manifest therefrom that the two psychiatrists who then examined appellant were not in agreement as to the status of appellant's then mental condition. One psychiatrist was of the opinion that if appellant was released he would probably not be dangerous to the safety of the officers, the property, or other interests of the United States. The other, so far as his testimony is preserved in the record, appears to have had sound doubt as to that fact. Such is the state of the record when the *nunc pro tunc* Section 4241 certification was executed as to appellant's mental condition, and filed on March 8, 1961.

In the light of the incomplete record made in the Section 4247 proceeding, *ante*, commenced by appellee, and the fact that the District Court dismissed appellant's application for a writ of habeas corpus in the case at bar, without hearing, we can only reverse and remand this proceeding to the District Court, with direction to complete the Section 4247 certification hearing commenced by appellee, make finding of facts in respect to the issues there raised, and adjudicate the same as provided in Section 4248, Title 18 U.S.C.A. and as justice requires. Such a hearing and adjudication can be none other than equitable in character.