Adrian Lee GUY, Appellant,

v.

Dr. P. J. CICCONE, Director, United States Medical Center for Federal Prisoners, Springfield, Missouri, Appellee.

No. 20190.

United States Court of Appeals, Eighth Circuit.

March 17, 1971.

Before MATTHES, Chief Judge and LAY and BRIGHT, Circuit Judges.

PER CURIAM.

■ Appellant Adrian Lee Guy, a fifteen-year-old Indian who was confined at the Medical Center for Federal Prisoners at Springfield, Missouri, filed a petition for writ of habeas corpus with the United States District Court for the Western District of Missouri on December 30, 1969. Guy alleged that his constitutional rights were being violated in that he was being held in an "addult [sic] penal like prison, or place that has better than 95 percent convicted persons." He also charged that his court-appointed attorney had unlawfully waived his rights in consenting to the confinement. Guy had been charged in the District of North Dakota with the crime of rape within the boundaries of an Indian reservation. Upon the motion of his attorney and pursuant to 18 U.S. C. § 4244, the district court for the District of North Dakota had ordered Guy to the Federal Medical Center for the purpose of determining his competency to stand trial.

His habeas corpus petition was denied on February 16, 1970. The habeas court, in an unreported opinion, ruled that Guy must seek relief from his confinement in the committing court as required by the rule of Arco v. Ciccone, 252 F.Supp. 347 (W.D.Mo.1965), aff'd, 359 F.2d 796 (8th Cir. 1966). Guy brings this appeal in forma pauperis.

Initially, we face appellee's motion to dismiss on the ground that appellant violated our rules by failing to file any brief in this court. In view of appellant's youth and his lack of appointed counsel, we deemed it essential to examine the proceedings in both the committing court and the habeas court in passing upon the motion.

In that review, we discovered that Guy is no long confined at the Medical Center, but, subsequent to the filing of this appeal, has been returned to North Dakota. In May of 1970, he pleaded guilty to the criminal charge against him in the committing court. His conviction has since been set aside pursuant to provisions of the Youth Corrections Act, 18 U.S.C. § 5021(b).[1] Thus, appellant's claims of illegality of confinement and illegality in the proceedings resulting in his confinement have now been mooted by his complete release from any confinement, and this appeal must be dismissed. See Harper v. Ciccone, 434 F. 2d 247 (8th Cir. 1970); cf. Hudson v. Hardy, 137 U.S.App.D.C. 366, 424 F.2d 854, 856, n.5 (1970).

BRIGHT, Circuit Judge, joined by LAY, Circuit Judge, concurring.

After examining Guy's files, we feel that the subject of an alleged illegal confinement of a juvenile in the Medical Center for Federal Prisoners at Springfield, Missouri, deserves additional comment, particularly in the interest of avoiding a repetition with another juvenile should there be merit to petitioner's allegations. See Moore v. Ogilvie, 394

---

1. Guy was placed on probation for a period of twenty-four hours, after which time the court set aside his conviction.

U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969).

In reviewing the nature and duration of appellant's stay at the Medical Center, we note that Guy entered the institution on December 13, 1969. Three days later, staff psychiatrists examined him and prepared a written report. Thereafter, Guy underwent other routine medical examinations. The staff issued a final report on January 14, 1970. Both reports showed Guy to be a normal, physically and mentally healthy teenager. Yet Guy remained at the Center for a period totalling eighty-nine days, about two-thirds of which time was served subsequent to the issuance of these reports. During this period, as we have already noted, the habeas court granted him no relief. Although the Medical Center reports indicated Guy was healthy and clearly competent to assist in his defense, these reports were not transmitted to any court. As a matter of proper procedure, the Center should have sent them to the committing court upon completion of the evaluation. Several weeks later, on February 9, 1970, the Federal Medical Center sent the reports to the committing court and notified the Clerk of Court and the United States Attorney and Marshal for the District of North Dakota that Guy was available to be returned. For some reason not revealed by the record, Guy remained in custody at the Medical Center until March 4, 1970.

It is quite appropriate here to consider appellant's probable environment during his stay there. For this, we turn to public information concerning the Medical Center. We find particularly instructive a 1966 publication of the Federal Bureau of Prisons, *A Study of the Federal Prisons Health Services* (hereinafter *Prison Study*). This publication presents the results of an in-depth study of the complete medical program at federal prisons conducted by representatives of the Bureau of Prisons and the Bureau of Medical Services and private consultants. The resulting publication devotes much discussion to the Medical Center for Federal Prisoners at Springfield, Missouri.

We learn that the Medical Center serves as the Bureau's central facility for the treatment of long-term, difficult and unusual medical and psychiatric cases. *Prison Study* at 48. The facility also serves as the principal institution for performing psychiatric examinations to assist the federal courts in making decisions regarding mental competency pursuant to 18 U.S.C. § 4244, and it provides treatment for persons who are found incompetent to stand trial and committed pursuant to 18 U.S.C. § 4246. *Id.* at 15, 48. Patients assigned to the Medical Center pursuant to §§ 4244 and 4246 occupy a substantial portion of the time of the limited and overburdened staff.[2]

These services are provided in a custodial, security atmosphere which dominates over the hospital nature of the institution. We have recognized previously that the Federal Medical Center is a penal institution and that one confined there suffers incarceration. United States v. Mills, 434 F.2d 266, 272 (8th Cir. 1970). See Van Sirrs v. Ciccone, 437 F.2d 884 (8th Cir. 1971); Rawls v. United States, 331 F.2d 21 (8th Cir. 1964); Garcia v. Steele, 193 F.2d 276 (8th Cir. 1951). The majority of the patients are adults between the ages of twenty-two and forty-nine, and their median age is in the range from thirty to thirty-nine years old. *Prison Study* at 55. Most are psychiatric patients, including psychotics, neurotics and homosexuals. *Id.* at 50, 56. The patients mix with each other in the use of the

---

2. In 1966, the Medical Center's eight psychiatrists treated 480 patients of the hospital's total population of about 800. The report comments as follows:

"Springfield's psychiatrists have had to limit their work principally to the treatment of the acute symptoms of mental illness. In far too many cases they have had to stop short of giving the full course therapy which might produce more permanent results." *Prison Study* at 50.

Medical Center facilities, regardless of age or whether or not they have been convicted.

It is within this framework that we consider Guy's eighty-nine days of confinement at the Federal Medical Center. We think it clear that such an atmosphere is highly inappropriate for a fifteen-year-old boy, in this case one fresh from an Indian reservation boarding school. Federal penal policy has been formulated with an awareness that youthful offenders require care and custody different and separate from adult prisoners. See generally the Youth Corrections Act, 18 U.S.C. § 5005, et seq. Juveniles arrested and held for federal crimes are not permitted to be placed or held in a jail or similar institution unless "it appears that such commitment is necessary to secure the custody of the juvenile or to insure his safety or that of others" and if confined to a jail or similar institution, the juvenile is to be segregated, if possible, from adult prisoners. 18 U.S.C. § 5035.

We believe Guy's extended confinement in the Medical Center was not only inappropriate, but also unnecessary. We therefore reexamine the court proceedings which resulted in Guy's confinement with adult patients, many of them mentally ill, most of them convicts. We question the committing court's order assigning Guy to the Medical Center for the purpose of undergoing a psychiatric examination in the atmosphere of that institution. The committing court possesses broad discretion in determining where and by whom an accused is examined. 18 U.S.C. § 4244. See Featherston v. Mitchell, 418 F.2d 582, 585–586 (5th Cir. 1969), cert. denied, 397 U.S. 937, 90 S.Ct. 945, 25 L.Ed.2d 117 (1970). We believe that a federal court should evaluate all relevant factors, including the age and background of the accused, in determining whether to order psychiatric evaluation at a local medical facility or at the Federal Medical Center. The court, of course, must consider the availability and adequacy of the local facilities. But consent to an examination at the Medical Center given by counsel for an accused juvenile should be accorded little weight in this determination. Counsel may be unaware of the Medical Center's unsuitability as a place for juvenile detention.

Adherence to these guidelines should save the Medical Center and the courts time and money. We think a mental competency evaluation by local physicians would likely cost the government less than examining an accused at the Federal Medical Center at Springfield, Missouri.[3] More importantly, it will mean less time, or no time, spent by juveniles in an adult prison atmosphere. Finally, utilization of these procedures will produce the collateral, beneficial effect of speeding up the administration of criminal justice.

---

3. In this case, a North Dakota Marshal made two round-trips to Springfield: the first bringing Guy to the institution, and the second returning him to North Dakota. The *Prison Study* observes:

"This distance [to Springfield] from the Courts, from the defendants' com-

munities of residence, and from the location of data relevant to their past behavior all result in high transportation costs and delay in providing the required information." *Id.* at 15.