*Ex parte* RENO.

1. **Pardon or Commutation:** WHEN EXECUTED, NOT REVOCABLE. A pardon or commutation of sentence takes effect, and the recipient of Executive clemency cannot be deprived of its benefits and immunities by a subsequent revocation, when it has been signed by the Executive, properly attested, authenticated by the seal of the State, and delivered either to the recipient, or to some one acting for him, or on his behalf.

2. **Constructive Delivery of a Pardon.** Delivery of a pardon by the Governor to one suing for the release of a prisoner confined in the State penitentiary, is constructive delivery to the prisoner.

3. **Pardon not Void because not Registered.** A pardon or commutation of sentence is not void because there is no entry made **of**

it in the office of the Secretary of State, although he is required by law to keep a register of the official acts of the Governor.

4. **Conditional Pardon.** Under the Constitution of 1865, the Governor had power to grant a conditional pardon, but the conditions, to be operative, should appear on the face of the paper.

*Petition for Habeas Corpus.*

*Ewing & Pope* for petitioner.

1. A delivery to the prisoner, or to the Warden, or to any one for the prisoner, is sufficient. *Commonwealth v. Halloway*, 44 Penn. Stat. 218; *In the matter of De Puy*, 3 Benedict's U. S. Dist. Ct. 307.

2. Being in possession of the grantee, it is presumed to have been duly delivered at the time it bears date. *Billings v. Stark*, 15 Fla. 297.

3. Being placed in the hands of a third party by the Governor for the prisoner, there is a delivery, although lost, destroyed or embezzled, while in such hands. *Henrichsen v. Hodgen*, 67 Ill. 179.

4. Anything done by the grantor in a deed, from which it is apparent a delivery was intended, either by words or acts, or both combined, is sufficient. The record of a deed raises a legal presumption that it has been delivered. *Kille v. Ege*, 79 Penn. St. 15.

*J. L. Smith*, Attorney-General, for respondent.

1. Section 21, article 5, of the constitution of 1865, provides that the Secretary of State shall keep a register of the official acts of the Governor, &c.; and the same provisions are embodied in the General Statutes of 1865, p. 139, Sec. 2. In the absence of such register, and it is not pretended that any was kept, the pretended commutation was not an official act of the Governor.

2. Gov. Brown expressly stated, on signing the commutation, that it must be so registered, or that he should consider it to be invalid. This was a condition precedent,

and, unless observed, rendered the commutation invalid. *Commonwealth v. Halloway*, 44 Penn. St. 210; 2 Hale, P. C., pp. 542-3-8-9; *U. S. v. Wilson*, 7 Peters 150; *State v. Leak*, 5 Ind. 359; *U. S. v. Stetter*, 1 Whart. Crim. Law, (15th Ed.) 766, note.

3. No delivery of the commutation had been made January 11th, 1873, and Gov. Woodson s general order revoking all orders issued by Gov. Brown, not then delivered, had the effect of annulling the commutation. *State v. McIntire*, 1 Jones (N. C.) 1; *Bird v. Breedlove*, 24 Ga. 622; *Ex parte De Puy*, 3 Ben. D. C. 307.

NORTON, J.—This is a proceeding by *habeas corpus*, on the part of John Reno, who alleges in his petition that, on the 16th day of January, 1868, he was convicted by the circuit court of Daviess county of burglary and larceny, and his punishment assessed at twenty-five years imprisonment in the penitentiary; that he is now confined in said penitentiary by the warden thereof, under said judgment and commitment; that on the 8th day of January, 1873, his sentence and punishment was commuted to ten years imprisonment by B. Gratz Brown, the then Governor; that he has served out his commuted sentence of ten years, and is entitled to his discharge, but that, notwithstanding this fact, he is still detained by James R. Willis, the warden, in confinement in said prison, who refuses to discharge him.

To the writ issued on the petition, the said Willis makes return and admits that he holds said Reno in custody by virtue of the judgment and sentence of the circuit court of Daviess county, sentencing him to twenty-five years imprisonment from the 16th day of January, 1868, but denies that said sentence has been commuted as alleged, and denies that petitioner is entitled to his discharge.

Petitioner filed his plea of commutation, which sets out the original pardon, signed by Governor Brown, as the ground upon which he claims his discharge. This we

shall treat as an answer to the return, and shall consider the replication filed thereto as making up the issues in the case.

In the reply it is admitted that the then acting Governor, B. Gratz Brown, on the 8th of January, 1873, issued the paper attached to the plea, but it is denied that it had the effect to commute the punishment of petitioner from twenty-five years to ten years.

1st, Because it was never delivered;

2nd. Because it was never registered in the office of the Secretary of State;

3rd. Because the condition, requiring it to be registered in said office, was never complied with, and it was never entered on the prison records;

4th. Because said pardon or commutation revoked by Governor Woodson, the successor of Brown.

It may be observed, as preliminary to the consideration of these questions, that a pardon or commutation is a mere matter of grace, and until this act of clemency is fully performed, neither benefit nor rights can be claimed under it. Simple intention on the part of the executive to bestow a pardon, confers no right, and is perfectly nugatory until the intention may be said to be fully completed. This intention may be said to be fully completed when the pardon is signed by the Executive, properly attested, authenticated by the seal of the State, and delivered, either to the person who is the subject of the favor, or to some one acting for him, or on his behalf. Whenever these things are done, the grantee, or donee of the favor, becomes entitled as a matter of right to all the benefits and immunities it confers, and of which he cannot be deprived by revocation or recall. *Commonwealth v. Halloway*, 44 Penn. St. 218. If these are correct principles governing such cases, and we think they are, the application of them to the evidence in this case will render the solution of the questions presented for our determination free from difficulty.

<div style="margin-left:2em; font-size:smaller;">
1. PARDON OR COMMUTATION: when executed not revocable
</div>

It is not pretended that the commutation reducing the punishment of petitioner from twenty-five to ten years, was procured by fraudulent or corrupt practices. On the contrary, Governor Brown testifies that he was induced to issue it from the conclusion which he had reached after much consideration, that ten years imprisonment was a sufficient punishment in 'any case where the party was sentenced for an offense committed against property. That he intended to issue the pardon, and in point of fact did issue it is clear beyond controversy, and indeed, stands admitted in the pleadings.

Was it delivered by him to the prisoner or any one for him? We think the evidence shows that it was. Governor Brown testifies that on the morning of 2. CONSTRUCTIVE DELIVERY OF A PARDON. the last day of his term of office, when he went to his office, he found persons there to remind and urge anew the matter of Reno's pardon; that he went to the office of the Secretary of State, got a pardon in the usual form filled in, with the exception of the term and the name, took it to his office, and after some little further thought, inserted the name and the reduction of his term of imprisonment to ten years, and handed the paper to one of the parties present in the ante-room, stating that it must be inscribed at the prison, and filed in the office of the Secretary of State before 12 o'clock, or he should consider it invalid, as he would be out of office at that hour. Now, it is impossible for the mind to resist the conclusion that the person to whom the pardon was delivered, was acting for and on behalf of Reno. If so, the delivery was complete, and the right of Reno to the benefits it bestowed, became fully established. But the delivery is further shown by the evidence of Bradbury, who was a deputy warden of the prison on the 8th of January, 1873, and who swears that, in the evening of that day he saw the commutation in the hands of Dougherty, the warden, who directed his clerk Haly to make an entry of it on the prison records; that the clerk, thereupon, with the paper before

him lying on the table, made the following entry opposite the name of Reno, "commuted from twenty-five years to ten;" that he was looking over the shoulders of the clerk and saw him make the entry; that about one month afterwards he examined the prison records and found that the entry had been erased, and that afterwards he found that part of the leaf on which it was made entirely torn off.

Thompson, who was the prison physician, testifies that on the morning of the 8th of January, 1873, about 11 o'clock, Dougherty, the warden, told him that Reno's sentence had been commuted to ten years, and handed him an official envelope from the Secretary of State's office, that he took it out of the envelope, that it had upon it the seal of the State and the signature of the Governor, that he did not read it, but accepted the statement of Dougherty as to what it was.

It thus appears that the pardon, after it passed from the hands of Governor Brown, was delivered to the Warden, Dougherty, who, as the evidence shows, was the customary recipient of such papers, in an official envelope from the office of the Secretary of State, on the morning of the day it issued, and that it was entered on the prison records in the afternoon of that day. The subsequent erasure of this entry and mutilation of the record, by tearing off so much of it as contained the entry, cannot affect the previously invested rights of Reno, but would justly consign the parties, who were engaged in it, to the incarceration and punishment, which they must have intended thereby to continue and perpetuate on Reno. The evidence also establishes the fact, that the custom was, where a pardon was granted, to deliver it to the warden, who made, on receiving it, the appropriate entry opposite the convict's name. The person to whom Governor Brown handed the pardon, was authorized to deliver it to the warden, for he testifies that he said it must be inscribed on the prison records, and expressed the opinion that it

should be done by 12 o'clock, as, after that time, he would cease to be Governor. A delivery of the pardon, under the circumstances in proof is, *prima facie*, equivalent to delivery, or is constructive delivery to the prisoner. 44 Penn. St., *supra*.

It is, however, insisted that the pardon is void, because there was no entry made of it in the office of the Secretary of State, who is required to keep a register of the official acts of the Governor. It would be establishing a hard and unreasonable rule to declare that the mere omission of the Secretary of State to enter in his register that the Governor had granted a pardon, would render void a pardon, which was intended to be issued, and was in fact issued and delivered. The pardon in question, on its face shows that it was the official act of Governor Brown, that he had a right to act on the subject to which it related, and that, in the action taken by him, he did not go beyond the scope of his power. The omission of the Secretary to make an entry of the official act of the Governor, in granting a pardon, would not have the effect to make void the pardon, any more than an entry, made by him in his register that the Governor had granted a pardon, would impart validity to it, when, in fact, no such pardon had ever been granted. Besides, the prisoner had no authority or control over the Secretary of State in regard to the performance of his duties. The principal announced above, as to the effect of the Secretary's failure to enter the act of the Governor in his register, is analogous to that declared is the case of *Scruggs v. Scruggs*, 41 Mo. 248, where it was held that the omission of the clerk to make the proper entry ou his record, as to the acknowledgment of a sheriff's deed, would not impair its validity, nor prevent the transmission of title under it. The power of the Governor to grant pardons and commutations is in nowise dependent upon any entry which the law requires the Secretary of State to make, nor upon any required to be made by the warden. The former require-

*(margin note: 3. PARDON NOT VOID BECAUSE NOT REGISTERD.)*

ment may be regarded as intended to preserve the evidence of the official acts of the Governor, and the latter, as designed to protect the warden in discharging a prisoner, who is the recipient of Executive clemency. The power of the Executive in this case was derived from the 6th section, article 5, of the constitution of 1865, which pro vides that, " The Governor shall have the power to grant reprieves, commutations and pardons after conviction for all offenses, except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as he may think proper, subject to such regulations as may be provided by law relative to the manner of applying for pardons. He shall, at each session of the General Assembly, communicate to that body each case of reprieve, commutation or pardon granted ; stating the name of the convict, the crime of which he was convicted, the sentence and its date, the date of the pardon, commutation or reprieve, and the reasons for granting the same."

It might, with the same show of reasoning, be contended that the failure of the Governor to report the fact of a pardon, the name of the convict, &c., to the General Assembly, would authorize the recapture and reimprisonment of the prisoner, who had been discharged by virtue of a pardon, and subject the warden to prosecution for allowing an escape, as to contend that the omission of the Secretary to record in his office the fact that a pardon had been granted, would render void an act of the Governor, which he had the full power to perform, independent of the question whether it was, or was not, recorded.

It is objected that the entry of the pardon, in the office of the Secretary of State, was one of the conditions 4. CONDITIONAL on which it was granted, and, not being PARDON. complied with, rendered it void. While the Governor may grant a pardon on conditions, such conditions to be operative should appear on the face of the paper. It is also insisted that the pardon in question,

was revoked by Governor Woodson, who succeeded Brown, and that proof thereof is to be found in the following receipt of W. H. Dougherty, the warden, viz:

"Received from Eugene F. Weigel, Secretary of State, a letter marked 'important,' containing peremptory instructions from Silas Woodson, Governor of Missouri, concerning a pardon, or other documents issued from the Executive Department, or Secretary of State's office, of date, prior to January 11th, 1873, and not yet presented to me, at 12:45 A. M., this January 11th, 1873.

W. H. Dougherty, Warden."

If the purpose of the document referred to in the receipt, was to revoke the commutation of Reno's sentence, it does not so appear, for no mention in terms is made of it. Its effect, according to the receipt, was to revoke only such pardons or documents as had not, up to the 11th of January, 1873, been presented to the warden. It cannot, therefore, have the effect which is claimed for it, because, the commutation of Reno had, three days prior thereto, on the 8th of January, been presented and acted on by said warden. The case of *Moses De Puy*, reported in 3 Benedict's D. C. R. 307, to which we have been cited, has no application. The principle there decided was that to make a pardon a completed act, there must be a delivery of it to the prisoner, or some one for him, and that, until this is done, the pardon is revocable. The correctness of these declarations are undisputed by us.

The case in 44 Penn. St., *supra*, and the case of *State v. Teak*, 5 Ind. 357, to which we have been cited, do not apply, the pardon in both cases having been declared void, because they were procured by fraud and forgery.

We have already shown, that in the case before us, there is no pretense of fraud in the procurement of the the commutation. The prisoner having served out the full term to which his sentence was commuted, his further imprisonment is illegal. He is entitled to a discharge from the imprisonment of which he complains, and he is, there-

fore, by the judgment of this court discharged therefrom ; all the judges concurring, except Judge Hough, not sitting.

DISCHARGED.