Ex Parte Ermal Jay Lime, Petitioner, v. Edison Blagg, Acting Warden.—131 S. W. (2d) 583.

Court en Banc, September 5, 1939.

*Irwin, Bushman & Buchanan* for petitioner.

*W. O. Sawyers,* Assistant Attorney General, for respondent.

ELLISON, J.—*Habeas Corpus* for the discharge of Ermal Jay Lime, a prisoner now confined in the State penitentiary under a warrant of commitment issued out of the Circuit Court of Jackson County. In February, 1932, the prisoner pleaded guilty in that court to the crime of bombing (Secs. 4424 and 4425, R. S. 1929, Mo. Stat. Ann., p. 3043) and was sentenced to life imprisonment in the penitentiary. After serving nearly six years of his sentence he was granted a "sick parole" by Governor Stark in January, 1938, because the penitentiary physician had certified that the prisoner was afflicted with pulmonary tuberculosis and in need of outside treatment. About two weeks later, without notice or hearing, the Governor revoked the parole following a recommendation by the Board of Probation and Parole. This recommendation was made because the Board had come to the belief that the prisoner was not afflicted with tuberculosis. There had been no violation of any of the other conditions of the parole.

The Attorney General contends the parole was a mere reprieve or suspended sentence which could be revoked by the Governor. at pleasure in the exercise of his constitutional powers, without notice or hearing and free from interference on the part of the legislative and Judicial Departments of the State. The prisoner contends the original order was a commutation of the sentence or a conditional pardon, which could not be revoked without notice to the prisoner and a hearing before an authorized tribunal. On this theory he maintains the revocation was void and denied him due process of law, citing: Ex parte Reno, 66 Mo. 266, 269, 27 Am. Rep. 337; Ex parte Strauss, 320 Mo. 349, 352, 7 S. W. (2d) 1000; Ex parte Rice, 72 Tex. Crim. Rep. 587, 162 S. W. 891.

The records brought up are conflicting, though all of them are certified by the Secretary of State. The sick parole order, as shown in the return of the Warden of the penitentiary to our writ, is dated January 16, 1938; as shown in the prisoner's denial of the return it is dated January 10, 1938. The record as a whole indicates the

latter date is correct. Otherwise both versions of the parole order are the same. It was as follows:

"TO THE SECRETARY OF STATE:

"Sir:

"In the matter of suspension of sentence of Ermal Jay Lime, #40630, who, on the 13th day of February, 1932, in the Circuit Court of Jackson County, plead guilty to the crime of Bombing, and whose punishment was assessed at Life in the State Penitentiary.

"Now, therefore, I, Lloyd C. Stark, Governor of the State of Missouri, by virtue of authority vested in me by law and for good and sufficient reasons appearing, do for the purpose of granting to the said Ermal Jay Lime, #40630, a sick parole, hereby suspend the sentence of the said Ermal Jay Lime, parole and release him from such imprisonment, to the end that he may receive proper treatment for tuberculosis, as shown by the certificate of the Prison Physician, heretofore laid before me. Upon the express condition, however, that the said Ermal Jay Lime shall faithfully demean himself as a citizen of the State of Missouri, and abide by the Laws of the State, and further, that he shall go immediately upon his release, to Mrs. J. S. Lime, Kansas City, Missouri, who has promised and agreed to receive him and act as his sponsor, and to make reports to the Governor in regard to his behavior, physical condition and compliance with the conditions of his parole.

"Upon the arrival of Ermal Jay Lime at Kansas City, Missouri, both Mrs. J. S. Lime and Ermal Jay Lime will advise the Governor of that fact; then every thirty days to the Governor by letter, his whereabouts, physical condition and his compliance with the provisions of this parole. Upon the restoration of the said Ermal Jay Lime to health, prior to said period, he may be arrested and returned to the prison and made to serve out the remainder of his sentence.

"Respectfully,

"(Signed) Lloyd C. Stark

"GOVERNOR

"This the 16th day of January, 1938."

The revocation of the sick parole order was dated January 26, 1938. The copy thereof attached to the Warden's return is wholly different from that attached to the prisoner's petition for our writ. The former by way of recital of past events, states the Governor "granted a commutation of sentence for the purpose of parole" which imposed conditions binding up to January 10, 1943. Later the revocation order refers to the parole order as a "Commutation Parole" and a "Parole Commutation." This revocation order is a mimeographed form used during the tenure of a former Governor, with words scratched out and filled in on a typewriter. It indicates the original was signed both by the Governor and the Secretary of State.

The revocation order attached to the prisoner's petition for the

writ states that on January 10, 1938, the Governor granted "a conditional parole" to the prisoner, which contained certain quoted language reciting that he did "for the purpose of parole hereby commute the sentence of the said Ermal Jay Lime, to a term ending the 10th day of January, 1938;" and binding him to show compliance with the conditions of the parole by letter every 30 days up to and including January 10, 1943. This latter revocation order is all typewritten and shows the original signed by the Governor and addressed to the Secretary of State.

■ Neither of these revocation orders recites that the original parole order was a sick parole releasing the prisoner from prison confinement for the purpose of receiving treatment for tuberculosis, though they do state the breach thereof arose from the fact that the Board of Probation and Parole had concluded the prisoner was not afflicted with tuberculosis. Both copies show the parole order commuted the sentence of the prisoner, effective on the date of issuance, January, 10, 1938, and placed him under parole for five years ending January 10, 1943. But with the original sick parole order before us, brought up by both parties, we cannot accept as true recitals in the two copies of the revocation order purporting to contradict its terms. Its effect must be taken as declared on its face— that it was a sick parole suspending the sentence of the prisoner in order that he might receive outside treatment for tuberculosis. It was more nearly like a reprieve than a 'pardon or commutation.

■ A pardon, as defined in 20 Ruling Case Law, section 1, page 521, is "a declaration on record by the chief magistrate of a state or county that a person named is relieved from the legal consequences of a specific crime;" or, as stated in 46 Corpus Juris, section 1 page 1181, "a pardon is an act of grace proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed." A commutation of sentence "is the change of a punishment to which a person has been condemned to a less severe one." [46 C. J., sec. 4, p. 1182.] In other language it is "the substitution of a less for a greater punishment, by authority of law." [20 R. C. L., sec. 11, p. 530.]

A reprieve "is the withdrawing of a sentence for an interval of time, whereby the execution is suspended." [46 C. J., sec. 5, p. 1183; 20 R. C. L., sec. 3, p. 522.] As further stated in the latter work, "it is merely the postponment of the sentence for a time. It does not and cannot defeat the ultimate execution of the judgment of the court, but merely delays it." With reference to the effect of a reprieve 46 Corpus Juris, section 46, page 1197, says "A repieve does not annul the sentence, but merely delays or keeps back the execution of it for the time specified. Consequently one who has secured reprieves is not exempted from arrest on the ground that the period

of sentence has meanwhile expired. Nor can one who accepted a governor's reprieve from a jail sentence complain when such reprieve is revoked." Strictly speaking the sick parole order involved here was not a reprieve, for it was indefinite as to the period of suspension. Indeed, it was not a postponment of the sentence but an indeterminate interruption thereof for administration purposes; and that only in the sense of suspending prison confinement, though the sentence, itself, ran on.

From the foregoing it seems clear that there is a distinction between even a conditional pardon or commutation and the sick parole order made in this case. The order expressly recited that "upon the restoration of the said Ermal Jay Lime to health *prior to said period,* he may be arrested and returned to the prison and made to serve out the remainder of his sentence." What the words we have italicized meant is not clear. But whatever they meant, the prisoner got no reduction in his sentence. He had had his day in court. He owed his debt to the law as much as before. He was released only for treatment. Unquestionably the Governor had the right to determine further whether such treatment was necessary, or to end it. We are not here dealing with a reprieve *ex necessitate legis,* as in cases of pregnancy or insanity. [See Secs. 3801, 3805, 3806, 3807, 3808, R. S. 1929, Mo. Stat. Ann., pp. 3316-3318.] But even there the finding of the Governor that a prisoner is insane, is conclusive against a county. [Shields v. Johnson County, 144 Mo. 76, 81, 47 S. W. 107, 108.]

It is true the order releasing the prisoner from confinement called itself a "sick parole," and stipulated that the prisoner faithfully demean himself, abide by the laws of the State, go at once to his mother, who was to act as his sponsor, and make periodical reports to his mother. But that was not for the purpose of reducing his sentence or redeeming him socially. Whatever way we look at this case, we can see nothing in the parole order conferring any vested right on the prisoner. The parole was simply an executive order made for the purpose of facilitating his treatment. In addition to the statutes already cited there is another more specifically applicable to this case, which shows the issuance and revocation of sick paroles rest in the discretion of the Governor. It is Section 8432, Revised Statutes 1929 (Mo. Stat. Ann., p. 6212), which provides: "It shall be the duty of the physician, whenever any convict confined in the prison shall be afflicted with any disease which is of such a character as to be incurable, or where such confinement will necessarily greatly endanger or shorten the life of such convict, to certify such facts to the board, stating the nature of the disease, and said board shall make such indorsement thereon as in their judgment the nature of the case requires, which certificate and indorsement shall be laid before the governor, who, in his discretion, may pardon or parole such convict."

The Governor's constitutional power in that field is beyond the range of judicial or legislative encroachment. [Ex parte Thornberry, 300 Mo. 661, 671-672, 254 S. W. 1087, 1090(11).] Section 8, Article V of the Constitution provides: ''The Governor shall have power to grant reprieves, commutations and pardons, after conviction, for all offenses, except treason and cases of impeachment, upon such condition and with such restrictions and limitations as he may think proper, subject to such regulations as may be provided by law relative to the manner of applying for pardons. He shall, at each session of the General Assembly, communicate to that body each case of reprieve, commutation or pardon granted, stating the name of the convict, the crime of which he was convicted, the sentence and its date, the date of the commutation, pardon or reprieve, and the reason for granting the same.''

The case cited by the petitioner, Ex parte Strauss, 320 Mo. 349, 352, 7 S. W. (2d) 1000, 1001, holds that in the absence of a statute authorizing the Governor to determine whether there has been a violation of a conditional commutation, *and* in the absence of any express reservation of such authority in the commutation, he has no power to pass upon that question. Ex parte Webbe, 322 Mo. 859, 863, 30 S. W. (2d) 612, 615 (1), holds ''the Governor is not confined to the statutory ground or manner of revocation,'' in view of his Constitutional power, which would seem to indicate he has such power independent of statute. But however that may be we think the Strauss case is not controlling here: first, because the sick parole provided the prisoner might be arrested and returned to prison upon his restoration to health; second, because the parole in this case was not a commutation, but a mere executive order, in the nature of a reprieve, which was subject to revocation in the Governor's discretion.

The prisoner is ordered remanded to custody. All concur.