

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI EX REL.     )
GOVERNOR MICHAEL L. PARSON,    )
                           )
      Relator,             )
                           )
v.                              )      No. SC100352
                           )
                           )
THE HONORABLE S. COTTON     )
WALKER,                    )
                           )
      Respondent.       )

*Opinion issued June 4, 2024*

## ORIGINAL PROCEEDING IN PROHIBITION

Marcellus Williams filed a petition for a declaratory judgment alleging Governor Michael L. Parson lacked authority to rescind an executive order issued by the former governor that stayed Williams' execution and appointed a board of inquiry pursuant to § 552.070.[1] After the circuit court overruled Governor's motion for judgment on the pleadings, Governor filed a petition for a writ of prohibition to bar the circuit court from taking further action other than sustaining the motion for judgment on the pleadings and denying Williams' petition for declaratory judgment. Governor is entitled to judgment on the pleadings as a matter of law because the Missouri Constitution vests the governor with

---

[1] All statutory citations are to RSMo 2016.

exclusive constitutional authority to grant or deny clemency and Williams has no statutory or due process right to the board of inquiry process. This Court makes permanent its preliminary writ prohibiting the circuit court from taking further action other than sustaining Governor's motion for judgment on the pleadings.

**Facts and Procedural History**

In 1998, Williams fatally stabbed Felicia Gayle while burglarizing her home. Following a jury trial, the circuit court sentenced him to death for first-degree murder. This Court affirmed Williams' judgment of conviction and sentence, *State v. Williams*, 97 S.W.3d 462 (Mo. banc 2003), and the judgment overruling postconviction relief. *Williams v. State*, 168 S.W.3d 433 (Mo. banc 2005).

Williams filed a petition for a writ of habeas corpus in federal court. The federal district court granted relief, but the court of appeals reversed the judgment and denied habeas relief. *Williams v. Roper*, 695 F.3d 825, 839 (8th Cir. 2012). The United States Supreme Court denied Williams' petition for a writ of certiorari. *Williams v. Steele*, 571 U.S. 839 (2013). This Court set a January 28, 2015, execution date.

On January 9, 2015, Williams filed a petition for a writ of habeas corpus in this Court. This Court vacated the execution date for additional DNA testing and habeas proceedings and appointed a special master to ensure complete DNA testing. After receiving the special master's report, this Court denied Williams' habeas petition. The United States Supreme Court denied Williams' petition for a writ of certiorari. *Williams v. Steele*, 582 U.S. 937 (2017). This Court set an August 22, 2017, execution date.

2

On August 14, 2017, Williams filed another petition for writ of habeas corpus, which this Court denied. The United States Supreme Court denied Williams' petition for a writ of certiorari. *Williams v. Larkins*, 583 U.S. 902 (2017).

On August 22, 2017, the former governor issued Executive Order 17-20 appointing a board of inquiry pursuant to § 552.070 and staying Williams' execution "until such time as the Governor makes a final determination as to whether or not he should be granted clemency." In 2023, Governor issued Executive Order 23-06 rescinding Executive Order 17-20, dissolving the board of inquiry, and removing "any legal impediments to the lawful execution of Marcellus Williams created by Executive Order 17-20, including the order staying the execution."

Williams filed the underlying declaratory judgment action alleging four counts: (1) Executive Order 23-06 violated his due process rights under the state and federal constitutions by denying his right to "a complete review of his claim of innocence" under § 552.070; (2) Executive Order 23-06 violated his federal due process rights under color of state law; (3) Governor lacked authority to dissolve the board of inquiry before the board provided Governor with a report and recommendation; and (4) Executive Order 23-06 violated the constitutional separation of powers.[2] Williams also filed discovery requests with the petition.

---

[2] In the introduction of his declaratory judgment petition, Williams offers a single, conclusory assertion he is entitled to challenge Governor's dissolution of the board of inquiry under the open courts provision of the Missouri Constitution. The open courts provision is not at issue because none of Williams' four counts allege he is entitled to relief thereunder, the circuit court did not address the open courts provision, and neither party's briefs raise the issue in this Court.

Governor filed a motion for judgment on the pleadings and a motion to stay discovery. Governor's motion for judgment on the pleadings asserted Williams had no protected due process interest in the clemency process. Governor also asserted Executive Order 23-06 did not violate § 552.070 and argues Williams's statutory claim fails as a matter of law.[3]

The circuit court overruled Governor's motion for judgment on the pleadings with respect to Counts I, II, and III, and stayed discovery for two weeks.[4] The circuit court concluded Williams had a due process right to demonstrate his innocence based on the former governor's Executive Order 17-20 appointing the board of inquiry pursuant to §552.070. The circuit court also concluded Governor had no authority to dissolve the board of inquiry. Governor filed a petition for a writ of prohibition or mandamus. This Court issued a preliminary writ of prohibition.

**Prohibition**

This Court has jurisdiction to issue original remedial writs. Mo. Const. art. V, § 4.1. This Court may issue a writ of prohibition:

> (1) to prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted.

---

[3] Williams also named Attorney General Andrew Bailey as a defendant. The circuit court sustained Attorney General's motion to dismiss and removed him as a defendant.

[4] The circuit court concluded Williams consented to judgment on the pleadings on Count IV and did not address his separation of powers claim. Williams asserts, and Governor agrees, that Williams did not consent to judgment on the pleadings for Count IV. As shown below, Count IV fails because it is premised on Williams' erroneous claim Executive Order 23-06 violated § 552.070.

4

*State ex rel. Tyler Techs., Inc. v. Chamberlain*, 679 S.W.3d 474, 477 (Mo. banc 2023).

"Prohibition is an appropriate remedy to avoid irreparable harm when the plaintiff's petition does not state a viable theory of recovery" and the relator is entitled to prevail as a matter of law. *Id.* (internal quotation omitted). A "motion for judgment on the pleadings should be sustained if, from the face of the pleadings, the moving party is entitled to judgment as a matter of law." *Hicklin v. Schmitt*, 613 S.W.3d 780, 786 (Mo. banc 2020) (internal quotation omitted).

### Executive Clemency

"Clemency is deeply rooted in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted." *Herrera v. Collins*, 506 U.S. 390, 411-12 (1993) (footnotes omitted). "The Due Process Clause is not violated where, as here, the procedures in question do no more than confirm that the clemency and pardon powers are committed, as is our tradition, to the authority of the executive." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 276 (1998). Therefore, "[w]hile traditionally available to capital defendants as a final and alternative avenue of relief, clemency has not traditionally been the business of courts." *Id*. at 284 (internal quotation omitted).

The Missouri Constitution enshrines the traditional understanding of clemency by granting "the governor complete discretion to grant pardons, commutations, and other

5

forms of clemency." *State ex rel. Dorsey v. Vandergriff*, 685 S.W.3d 18, 31 (Mo. banc 2024).[5] Article IV, § 7 provides:

> The governor shall have power to grant reprieves, commutations and pardons, after conviction, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to provisions of law as to the manner of applying for pardons. The power to pardon shall not include the power to parole.

This constitutional text recognizes the governor's clemency power encompasses three distinct actions: reprieves, commutations, and pardons. A reprieve temporarily stays the execution of a sentence. *Lime v. Blagg*, 131 S.W.2d 583, 585 (Mo. banc 1939). A commutation reduces the severity of a sentence. *Id.* A pardon relieves an offender from the consequences of a specific crime. *Id.*

The distinctly different relief provided by reprieves, commutations, and pardons entails different limitations on the governor's ability to rescind previously granted clemency relief. Like a reprieve, "a pardon or commutation is a mere matter of grace[.]" *Reno*, 66 Mo. at 269. But unlike the temporary stay of the execution of a sentence granted by a reprieve, pardons and commutations permanently annul or alter the sentence itself.

[5] Since statehood, the Missouri Constitution has vested the governor with exclusive authority to grant or withhold clemency. *See State ex rel. Lute v. Mo. Bd. of Prob. & Parole*, 218 S.W.3d 431, 435 (Mo. banc 2007) (quoting *Ex Parte Reno*, 66 Mo. 266, 269, 273 (1877)) (stating clemency "is 'a mere matter of grace' that the governor can exercise 'upon such conditions and with such restrictions and limitations as he may think proper'"); *Whitaker v. State*, 451 S.W.2d 11, 15 (Mo. 1970) (stating "the power of pardon lies in the uncontrolled discretion of the governor"); *State ex rel. Oliver v. Hunt*, 247 S.W.2d 969, 973 (Mo. banc 1952) (stating "a pardon issues upon *ipse dixit* of the governor" and is "conceived in mercy and is said to be in derogation of law"); *Lime*, 131 S.W.2d at 586 (explaining the governor's constitutional power to grant reprieves, commutations, and pardons "is beyond the range of judicial or legislative encroachment"); *State v. Sloss*, 25 Mo. 291, 294 (1857) (stating the Missouri Constitution vests "the power of pardoning in the chief executive officer of the state").

Once the governor grants a pardon or commutation, therefore, the "act of clemency is fully performed[,]" and "the grantee … becomes entitled as a matter of right to all the benefits and immunities it confers, and of which he cannot be deprived by revocation or recall." *Id*. By contrast, because "[a] reprieve does not annul the sentence, but merely delays or keeps back the execution of it[,]" the recipient cannot "complain when such reprieve is revoked." *Lime*, 131 S.W.2d at 585. As a temporary, discretionary respite from a sentence, a reprieve creates no rights and carries only the necessary expectation that the governor may rescind it any time.

Given the governor's article IV, § 7 clemency power, Executive Order 17-20 was a reprieve because it expressly stayed Williams' execution "until such time as the Governor makes a final determination as to whether or not he should be granted clemency." Because Executive Order 17-20 was a reprieve, Governor was free to rescind it at his discretion. *Lime*, 131 S.W.2d at 586 (holding "a mere executive order, in the nature of a reprieve, … was subject to revocation in the Governor's discretion").[6]

## Section 552.070

Against this backdrop of the governor's absolute discretion to grant clemency relief and rescind a reprieve, Williams alleged in Count III of his declaratory judgment action that § 552.070 precluded Governor from rescinding Executive Order 17-20 and dissolving

---

[6] The fact a reprieve was issued by a former governor has no bearing on any successive governor's authority to rescind that reprieve. Irrespective of the individual who momentarily occupies the office, he or she exercises the article IV, § 1 "supreme executive power … vested in a governor." Governor necessarily is free to exercise that supreme executive power to rescind a reprieve issued by himself or any prior governor.

7

the board of inquiry prior to receiving the board's report and recommendations. Section 552.070 provides:

> In the exercise of his powers under Article IV, Section 7 of the Constitution of Missouri to grant reprieves, commutations and pardons after conviction, the governor may, in his discretion, appoint a board of inquiry whose duty it shall be to gather information, whether or not admissible in a court of law, bearing upon whether or not a person condemned to death should be executed or reprieved or pardoned, or whether the person's sentence should be commuted. It is the duty of all persons and institutions to give information and assistance to the board, members of which shall serve without remuneration. Such board shall make its report and recommendations to the governor. All information gathered by the board shall be received and held by it and the governor in strict confidence.

"The goal of statutory interpretation is to give effect to the General Assembly's intent as reflected in the plain language of the statute at issue." *State ex rel. Fitz-James v. Bailey*, 670 S.W.3d 1, 6 (Mo. banc 2023) (internal quotation omitted). This Court avoids interpretations producing "unreasonable or absurd results." *Id.* (internal quotation omitted).

Williams concedes Governor has exclusive power over the final decision whether to grant clemency but claims Governor lacked authority to make a final clemency decision without the report and recommendations the board "shall" provide to the governor pursuant to § 552.070. Williams' argument rests on an inference that the board's statutory obligation to provide the governor with a report and recommendations limits the governor's constitutional authority to grant or withhold clemency in a death penalty case. This argument lacks merit.

The requirement that the board "shall make its report and recommendations to the governor" imposes an obligation on the board, not the governor. The only obligation

8

imposed on the governor, in addition to the board, is to hold any information gathered by board in strict confidence.[7] Section 552.070 imposes no other obligation or limitation on the governor and does not limit Governor's absolute discretion over clemency relief and to rescind the former governor's reprieve. Adopting Williams' argument that a governor's appointment of a board pursuant to § 552.070 imposes an indefinite procedural bar to the final clemency decision would be in derogation of the constitutional clemency power. This Court avoids interpreting a statute in a way "that would call into question its constitutional validity." *State ex rel. Praxair, Inc. v. Mo. Pub. Serv. Comm'n*, 344 S.W.3d 178, 187 (Mo. banc 2011). Section 552.070 does not limit Governor's authority to rescind Executive Order 17-20 and order the execution of Williams' lawfully imposed sentence.

Williams also claims § 552.070 authorized Governor to appoint the board but did not authorize him to dissolve it. Once again, Williams' interpretation of the statute impermissibly limits Governor's exclusive constitutional clemency power. Adopting Williams' interpretation means a board of inquiry appointed by a governor to assist with the exercise of the article IV, § 7 clemency power could prevent that governor, and his or her successors, from exercising that power by failing to produce a report and recommendation. Because the discretionary appointment of a board of inquiry pursuant to § 552.070 merely facilitates the governor's exercise of the exclusive constitutional

---

[7] In addition to the constitutional reservation of the clemency power to the governor, Williams' declaratory judgment action and proposed discovery are at odds with the statutory confidentiality requirement, further demonstrating the likelihood of irreparable harm and necessity of a writ of prohibition.

9

clemency power, the governor necessarily retains authority to rescind a reprieve or deny clemency irrespective of the board's action or inaction.

While the General Assembly cannot regulate the governor's ultimate clemency decision, article IV, § 7 authorizes regulation of "the manner of applying for pardons." Williams argues § 552.070 is such a law and precludes Governor's rescission of Executive Order 17-20 and dissolution of the board of inquiry. Construing § 552.070 as a law regulating the manner of applying for pardons yields the absurdly circular conclusion that the governor's appointment of a board of inquiry is a pardon application to himself on behalf of the capital offender. This Court will not construe a statute as requiring an absurd result. *Fitz-James*, 670 S.W.3d at 6. The governor's discretionary appointment of a board of inquiry to gather information to assist his exercise of the article IV, § 7 clemency power is not a provision "of law as to the manner of applying for pardons."[8]

Governor was entitled to judgment on the pleadings with respect to Count III because Williams' allegations fail as a matter of law to show Governor lacked authority to rescind the former governor's reprieve and order the execution of Williams' sentence. Count IV, alleging Executive Order 23-06 violated the separation of powers, fails because it is premised on Williams' erroneous claim Governor lacked authority to dissolve the board and order the execution of Williams' sentence.

_____

[8] Section 217.800 governs applications for a pardon, commutation, or reprieve. "When prisoners petition the governor for clemency, the [Missouri Board of Probation and Parole] investigates each case and submits a report of its investigation, along with its recommendations, to the governor." *Lute*, 218 S.W.3d at 435. "The Board must follow the governor's orders as he is granted the sole authority to commute sentences at his discretion." *Id*.

**Due Process**

In Counts I and II, Williams alleged Executive Order 23-06 violated his due process rights under the state and federal constitutions by denying state-created rights under Executive Order 17-20 and § 552.070, preventing a complete review of his claim of innocence during the clemency process. Williams further alleged this state-created right to the board of inquiry process could also create other rights to additional procedures, "including additional court filings, political pressure on [Governor] to commute his sentence, and potential action by other members of the executive branch." The circuit court erroneously declared the law when it concluded Williams alleged a protectible due process interest in demonstrating his innocence pursuant to Executive Order 17-20 and § 552.070.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin* 545 U.S. 209, 221 (2005). While "[a] state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right … the underlying right must have come into existence before it can trigger due process protection." *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 463 (1981). The expectation of clemency relief from a lawfully imposed sentence is a "unilateral hope" that does not trigger due process protection. *Id*. at 465.

Neither Executive Order 17-20 nor § 552.070 provides a state-created right triggering due process protection. As Executive Order 17-20 illustrates, the board of inquiry process is initiated at the governor's sole discretion. Section 552.070 serves as an

11

additional, purely discretionary mechanism to assist the executive clemency decision vested constitutionally with the governor alone. Neither the statute nor Executive Order 17-20 vested Williams with an existing right triggering due process protection.[9] Governor's executive order dissolving the board and ordering the completion of Williams' sentence in no way denied Williams access to any process to which he was legally entitled.

Alternatively, Williams argues he alleged a due process interest in his own life under Justice O'Connor's concurring opinion in *Woodard*. *See Woodard*, 523 U.S. at 288 (O'Connor, J., concurring). Williams asserts Justice O'Connor's concurring opinion governs and establishes he is entitled to at least "minimal" due process protection during the clemency process.

In *Woodard*, an inmate sentenced to death challenged Ohio's clemency process. *Id*. at 277 (plurality opinion). Like Missouri, Ohio law provided the governor had discretion to grant or deny clemency. *Id*. at 276. But unlike §552.070, the Ohio law provided capital offenders with the right to request an interview and to have a mandatory clemency hearing. *Id*. at 276 - 77. The inmate did not challenge those procedures. *Id*. at 277. Instead, he claimed Ohio violated due process rights implicit in the state-created procedural rights by providing short notice and limiting the assistance of counsel. *Id*.

---

[9] Williams' lack of any existing right under Executive Order 17-20 or § 552.070 disposes of the circuit court's reliance on *District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52 (2009). In *Osborne*, the Supreme Court held a state law allowing a state court to vacate a conviction based on clear and convincing, newly discovered evidence of innocence triggered some due protections that were satisfied in that case. *Id*. at 68-70.

Unlike the statutory right to seek postconviction relief in state court in *Osborne*, § 552.070 provides Williams with no right to the initiation or continuation of the board of inquiry process.

In a 4-4-1 opinion, the Supreme Court reversed the court of appeals' judgment, and held the inmate did not show a due process violation. Chief Justice Rehnquist, joined by three justices, concluded Ohio's clemency laws did not create any procedural or substantive rights implicating due process. *Id.* at 285. Justice O'Connor, also joined by three justices, reasoned an inmate sentenced to death retained a due process life interest requiring some "minimal" due process protection in the clemency process and decision, but concluded Ohio's process satisfied that minimal standard. *Id*. at 290 (O'Connor, J., concurring). While providing no analytical framework for assessing the contours of minimal due process, Justice O'Connor illustrated her concern by hypothesizing "[j]udicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." *Id*. at 289. Finally, writing alone, Justice Stevens filed an opinion concurring in part and dissenting in part, agreeing Ohio's procedures must meet minimum due process requirements, but dissenting because he would have remanded the case to the district court to determine "whether Ohio's procedures meet the minimum requirements of due process." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 118 S. Ct. 1244, 140 L. Ed. 2d 387 (1998) (Stevens, J., concurring in part and dissenting in part).

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds[.]" *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*,

13

428 U.S. 153, 169 n.15 (1976)).  Chief Justice Rehnquist's opinion held Ohio's clemency procedures did not implicate due process.  Justice O'Connor's opinion concluded those procedures triggered "minimal" due process protections against wholly arbitrary clemency procedures and decision making.  A straightforward application of *Marks* shows Chief Justice Rehnquist's opinion controls because it is the position taken by those Justices who concurred in the judgment on the narrowest grounds.[10]

Chief Justice Rehnquist's controlling opinion in *Woodard* acknowledged a capital offender "maintains a residual life interest," but concluded the "interest in not being executed in accord with his sentence" does not trigger due process protections in the executive exercise of clemency authority.  *Woodard*, 523 U.S. at 281.  Because any expectation the discretionary executive clemency process will result in the commutation of a lawfully imposed death sentence is simply a "unilateral hope[,]" a capital offender retains no protectible due process interest within the clemency process.  *Id.* at 282 (internal quotation omitted).

---

[10] Some federal and state courts suggest Justice O'Connor's concurring opinion provides the Supreme Court's opinion on the specific issue of whether the Due Process Clause applies to clemency.  *See, eg.*, *Barwick v. Governor of Fla.*, 66 F.4th 896, 902 (11th Cir. 2023) (stating "Justice O'Connor's concurring opinion provides the holding in *Woodard*"); *Duvall v. Keating*, 162 F.3d 1058, 1061 (10th Cir. 1998) (holding Justice O'Connor's concurring opinion was the "narrowest majority holding" and establishes "some minimal level of procedural due process applies to clemency proceedings"); *Foley v. Beshear*, 462 S.W.3d 389, 394 (Ky. 2015) (applying Justice O'Connor's concurring opinion because it is the "narrower holding on the due-process question"); *Bacon v. Lee*, 549 S.E.2d 840, 848 (N.C. 2001) (holding "Justice O'Connor's concurring opinion represents the holding of the Court because it was decided on the narrowest grounds and provided the fifth vote").  This Court is not bound by "decisions of the federal district and intermediate appellate courts and decisions of other state courts[.]"  *Doe v. Roman Cath. Diocese of St. Louis*, 311 S.W.3d 818, 823 (Mo. banc 2010).  This Court concludes Chief Justice Rehnquist's opinion states the applicable law governing due process in discretionary state clemency proceedings.

Chief Justice Rehnquist also concluded Ohio's clemency process did not trigger additional due process rights. Despite the delegation of some procedural authority to the parole board, the Ohio governor retained "broad discretion" that, "[u]nder any analysis … need not be fettered by the types of procedural protections sought by" the inmate. *Id*. Unlike judicial proceedings to adjudicate guilt, executive clemency does "not determine the guilt or innocence of the defendant" and is "independent of direct appeal and collateral relief proceedings." *Id*. at 284. Because "[p]rocedures mandated under the Due Process Clause should be consistent with the nature of the governmental power being invoked[,]" Ohio's creation of some procedural rights for offenders in the discretionary executive clemency process did not entail additional due process protections. *Id*. at 285. Thus, "the executive's clemency authority would cease to be a matter of grace committed to the executive authority if it were constrained by the sort of procedural requirements that respondent urges." *Id*.

*Woodard* forecloses Williams' argument he retains a protectible due process interest during the clemency process following his lawfully imposed death sentence and the exhaustion of potential state and federal postconviction judicial remedies. Section 552.070 neither creates nor implies any procedural rights for the offender. Williams has nothing more than a "unilateral hope" for discretionary clemency relief from his lawfully imposed death sentence. *Id*. at 280 (quoting *Dumschat*, 452 U.S. at 465). His argument distills to a plea for an act of gubernatorial mercy, not a valid argument for recognizing due process rights in Governor's exercise of the discretionary clemency power. *Id*. at 285; *see also*

15

*Dorsey*, 685 S.W.3d at 31 n.12 (recognizing article IV, § 7 vests the governor with "absolute discretion over clemency relief").[11]

## Conclusion

Section 552.070 cannot and does not limit Governor's clemency power. Williams alleged no cognizable liberty or life interest triggering due process protections during the clemency process or restraining Governor's absolute discretion to grant or deny clemency. Governor is entitled to judgment on the pleadings. The preliminary writ of prohibition is made permanent.

_____
Zel M. Fischer, Judge

All concur.

---

[11] Applying Justice O'Connor's "minimal" due process standard does not change the conclusion. Justice O'Connor's minimal due process standard is premised on wholly arbitrary state action in both the clemency decision (flipping a coin) and the clemency process (denial of any access). *Woodard*, 523 U.S. at 289 (O'Connor, J., concurring). Williams agrees Governor "has the exclusive power over the final decision whether to grant clemency." His argument focuses on Governor's dissolution of the board of inquiry prior to it providing a report and recommendations. Williams' allegations, however, cannot meet Justice O'Connor's standard because he does not allege facts showing "the State arbitrarily denied a prisoner any access to its clemency process." *Id.* To the contrary, Executive Order 17-20 specifically acknowledges "Williams has submitted an application for clemency and requested appointment of a board of inquiry pursuant to Section 552.070 RSMo[.]" Williams alleges the former governor appointed a board of inquiry and he then presented "significant information" to the board, which had six years to consider the case before Governor exercised his constitutional authority to rescind Williams' reprieve. These allegations do not show an arbitrary denial of "any access" to the clemency process under Justice O'Connor's "minimal" due process standard.